(September 8, 2009)

■ SARAH ANTONIO et al., Appellants, v GEAR TRANS CORP. et al., Respondents, et al., Defendants. [885 NYS2d 48]—

Order, Supreme Court, New York County (Kenneth L. Thompson, Jr., J.), entered April 3, 2008, which granted the motion of defendants Gear Trans Corp. and Niamke Agniman for summary judgment dismissing the complaint on the ground that plaintiffs did not sustain serious injuries within the meaning of Insurance Law § 5102 (d), affirmed, without costs.

Defendants met their burden of establishing prima facie that plaintiffs did not sustain permanent consequential or significant limitations by submitting the affirmations of several doctors who, upon examining plaintiffs and performing objective tests, concluded that plaintiffs' injuries were resolved and, in plaintiff Ventura's case, that her right ankle injury was caused by a prior car accident (*see e.g. Charley v Goss*, 54 AD3d 569, 570-571 [2008], *affd* 12 NY3d 750 [2009]; *Figueroa v Castillo*, 34 AD3d 353 [2006]). Defendants also established that plaintiffs had no 90/180-day injury through plaintiffs' deposition testimony indicating that Antonio returned to school a week after the accident and was confined to home for one week, and that Ventura was confined to bed and home for only two weeks (*see Lloyd v Green*, 45 AD3d 373 [2007]; *Guadalupe v Blondie Limo, Inc.*, 43 AD3d 669 [2007]).

Plaintiffs failed to raise an issue of fact with respect to their 90/180-day claims. Their treating physician's statements that they were "medically disabled" throughout the time they were under her care and that she advised them to, among other

things, refrain from any work or other activities that might cause them discomfort or pain are too general to raise the inference that plaintiffs were unable to perform their usual and customary activities during the statutorily required time period or that their confinement to bed and home was medically required (*see Gorden v Tibulcio*, 50 AD3d 460, 463 [2008]).

Plaintiffs failed to raise a triable issue of fact whether Ventura sustained a significant or permanent consequential limitation to her cervical spine or right ankle, since their treating physician did not perform any tests on those body parts during her most recent examination of Ventura (*see Thompson v Abbasi*, 15 AD3d 95, 97 [2005]). Further, since the physician failed to review Ventura's medical records concerning her prior right ankle injury, there is no objective basis by which to attribute any new injuries to the later accident (*Gorden*, 50 AD3d at 464). Plaintiffs also failed to raise an issue of fact regarding a significant or consequential limitation of use of Antonio's right knee since their physician failed to quantify her initial findings, identify any objective tests and compare her findings to normal ranges, and failed to perform any tests on Antonio's right knee in her last two examinations (*see Lattan v Gretz Tr. Inc.*, 55 AD3d 449, 449-450 [2008]).

As to plaintiffs' alleged additional spinal injuries, their physician's conclusory findings on her September 24, 2007 examination of Ventura's lumbar spine and Antonio's cervical and lumbar spine, using an inclinometer, that Antonio had "significant limitations when comparing [her] cervical and lumbar spine to what would be considered normal" and that Ventura had "permanent consequential limitation of use of her neck, back and right ankle when compared to what would be considered normal," were insufficient to raise an issue of fact as to serious injury. Moreover, the physician's conclusion, arrived at seven years later, that those injuries, namely bulging discs, were causally related to plaintiffs' May 14, 2000 accident and were permanent, consequential and significant failed to offer any quantitative assessment of the range of motion in terms of numeric percentage, or of how the accident reduced the functioning of plaintiffs' spines below the level of function that existed immediately before the accident (*see Suarez v Abe*, 4 AD3d 288 [2004]).

With respect to the seven-year gap in plaintiffs' respective treatment, aside from the fact that these paragraphs of the physician's affidavits are identical except for a reference to the right ankle in the affidavit concerning Ventura and to the right knee in the affidavit concerning Antonio, the physician's

conclusory opinion that, after five or six months of "active physical therapy," plaintiffs "reached a plateau" and physical therapy "was discontinued on [her] recommendation because [she] felt [plaintiffs] had reached maximum medical improvement with therapy" is insufficient under the circumstances to explain this gap (*see Eichinger v Jone Cab Corp.*, 55 AD3d 364, 364-365 [2008] [14-month gap in treatment]; *see also Franchini v Palmieri*, 1 NY3d 536, 537 [2003] [plaintiff's experts provided no "foundation or objective medical basis supporting the conclusions they reached"]). Concur—Gonzalez, P.J., Andrias and Buckley, JJ.

Acosta, J., dissents in part in a memorandum as follows: I dissent only to the extent that I would deny defendants' motion with respect to the alleged injuries to plaintiff Ventura's lumbar spine and plaintiff Antonio's lumbar and cervical spine.

Contrary to the majority's holding, plaintiffs raised an issue of fact with respect to Ventura's alleged lumbar spine injury. Their physician's conclusion that Ventura's injuries, i.e., bulging lumbar discs, were causally related to the accident and were permanent, consequential and significant was supported by objective evidence, namely, the MRI and CT scan reports and the positive straight leg raising tests (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 355 [2002]; *Brown v Achy*, 9 AD3d 30, 32 [2004]). While the physician did not ascribe a specific percentage to the loss of range of motion in Ventura's lumbar spine, she sufficiently described Ventura's limitations qualitatively on the basis of the lumbar spine's normal function, in particular, by correlating Ventura's bulging discs with her inability to perform such normal daily tasks as sitting, standing, walking and driving for long periods of time and such household chores as laundry, cleaning floors, and carrying groceries (*see Toure* at 355).

Plaintiffs also raised an issue of fact with respect to Antonio's alleged lumbar and cervical spine injuries. Their physician's conclusion that those injuries, namely bulging discs, were causally related to the accident and were permanent, consequential and significant was supported by objective medical evidence, including the MRI reports, the positive straight leg raising tests, and her observations of muscle spasms during her examination of Antonio's cervical spine (*see Toure*, 98 NY2d at 353, 355; *Brown*, 9 AD3d at 32). As in Ventura's case, the physician did not quantify the loss or limitation in Antonio's lumbar and cervical spine during her most recent examination, but she sufficiently described Antonio's limitations qualitatively "based on the normal function, purpose and use of the body part[s]" (*see Toure*, 98 NY2d at 353, 355).

With respect to the seven-year gap in treatment, the physician's explanation that plaintiffs had reached maximum medical improvement with physical therapy and that she had advised them to continue home therapy was sufficient to raise an issue of fact (*see Pommells v Perez*, 4 NY3d 566, 576-577 [2005] [doctor's explanation, that once he determined further medical therapy would "be only palliative in nature," he terminated treatment and instructed plaintiff to continue exercises at home, was sufficient. "A plaintiff need not incur the additional expense of consultation, treatment or therapy, merely to establish the seriousness or causal relation of his injury."]).